Good morning, your honors. My name is Kevin Little, and I represent Robert Morris in this appeal. All cases turn on credibility, this one perhaps more so than others. Through the combination of rulings that are at issue on appeal here today, the court unfortunately tipped the scales unfairly to the plaintiff's disadvantage. The primary issue was the jury instruction. It is very obvious from a reading of the record that the plaintiff's theory of the case was that Officer Long used force against him, not because he presented a threat during the course of the blood draw, but because he had been complaining constantly about the way that this investigation was handled, and how he had used force. And finally, the officer just simply had enough. The jurors, even if they credited Mr. Morris's testimony, there wasn't an instruction in the record that would have told them how they could have ruled in his favor. The jury, just as in the Guilford case, and the Guilford case, I would submit to you, really is controlling here. That's a case where a false arrest defense verdict was reversed because a court refused a similar First Amendment-type instruction. In this case, the jurors could have believed Mr. Morris, and they still could have found, well, he was a little bit disruptive, so, and the force instruction 9.22 does talk about resistance, so he resisted, and so maybe the force was okay. Counsel, why wasn't the court correct in saying that the instruction requested was more appropriate for First Amendment retaliation cases as opposed to excessive force cases? Precisely because of what Guilford holds, Your Honor. Guilford was a Fourth Amendment false arrest case. Our amendments are not, unfortunately, or fortunately, standalone doctrines. They often interplay, and this is a case where you could not, based only on the Fourth Amendment, instruct the jury accurately as to this charge. You can't balance someone's right to free speech in a Fourth Amendment case. But if Guilford be – he was arrested for what he said. He was arrested for disorderly conduct. Yes. So it wasn't the same scenario as this case where you're saying excessive force as opposed to false arrest. That's true, but the Constitution does not permit an officer either to arrest or to attack someone for using free speech. But if the instruction given adequately informed the jury as to what constitutes excessive force, why wouldn't that be enough to protect your client's ability to prevail? Unfortunately, because the instructions altogether failed to address how his speaking out and complaining, how that impacted. If it's purely criticism and not threatening speech, if it's pure criticism, how does the jury weigh that in determining whether or not force was appropriate? There was simply no instruction that gave them any guidance. There was no instruction. As a matter of fact – Do you have a case where – Guilford is your best case. You're saying for the proposition that the court was required to give the instruction that your client had the right to make whatever statements he made. Is that the best case you have for that proposition? Well, Your Honor, the – also the Winter – Winter route case cited in our brief is a case where this Court recognized, and that's a fairly recent case, that First Amendment principles still must nonetheless be considered in the excessive force context if there are free speech type invocations by the subject of the force. I'm just having trouble figuring out how your theory is cognizable on an excessive force claim. The only question this claim presents is whether a reasonable officer, police officer, in Officer Long's position, would have behaved as Officer Long did, and his subjective motivation is irrelevant. So I'm just trying to figure out how Guilford helps you here. It's not – we're not, Your Honor, dealing with his subjective motivation. We are dealing with an officer who himself may well have believed under the law that he could have put hands on someone merely for speaking out. But the jury needed to know that that was not permissible. It's not a state of mind issue. It's what is objectively reasonable. Can you use force on someone for speaking out? But if all of those facts are presented to the jury, the argument is made by counsel, and the excessive force instruction is provided to the jury, why is something additional required? The same as in the Guilford case, Your Honor, where the Court found that absent an instruction, the jury would not know what to do with the free speech issues. We as lawyers, it's almost second nature to us. Of course, if it's just talking, you can't act out. In Guilford, the district court's instructions affirmatively suggested to the jury that a police officer could arrest a person solely based on that person's protected speech. And I don't think there's an instruction in this case that would have given the jury that impression. So I'm just trying to figure out your argument. The instruction here, Your Honor, told the jury that they could balance all of the factors that were brought to bear in the situation in determining whether force was reasonable. And you simply cannot balance someone's free speech. They're under no circumstance, no matter how vociferous your objection, can you be subjected to physical force for merely speaking out. So the balancing test instruction simply does not suffice in this situation. I think I understand your argument to be that your fear was that when the jury is trying to decide who to believe and whether or not Mr. Morris was cooperative, that the jury might falsely think that the statements he was making about, I need your name, I'm going to sue you, would indicate that he was uncooperative. So you wanted to make sure the jury didn't take that into consideration in weighing whether or not he's cooperative. But he also made some statements that the jury could find to be provocative, such as what are you going to do about it. That was Officer Long's version. That was Officer Long's version. And that's precisely why this case turned on credibility. Mr. Morris denied making that statement. That was Officer Long's statement only. I'd like to turn to the second issue, if I could, which is that this is a case where there was an admitted act of dishonesty by this officer. Where he had asked a witness to an investigation of which he was the target. If I were you, I would not produce those photographs. Unlike much 608B evidence, where whether or not the dishonest act occurred is hotly in dispute, that was not the case here. Nonetheless, the court found that that was unduly prejudicial. The rule 608B is an inclusionary rule. And here, the deposition, which was part of the record, made it clear that the act of dishonesty occurred. The rationale, the defendant's rationale for why this shouldn't come in, well, I did that because I felt the investigation was biased against me. That's not a justification. And that's when, under the 403 concerns that the court had, well, we'd have to get into all of these issues, and it would become a mini-trial. But what was the act of untruthfulness? That's what the court was asking. At first, the court said, I'm not even sure how this is conduct that exhibits untruthfulness. Because you're right, that Officer Long did admit that he said those words. Right. But how is it untruthfulness? Asking a witness to conceal evidence in an investigation is an act of dishonesty. As a matter of fact, Officer Long himself admitted during his deposition, which again is part of the record, that if the investigation, if he had done that in a criminal investigation as opposed to an internal affairs investigation, he would have violated Penal Code Section 136.1. 136.1 applies to any investigation authorized by law, not merely a criminal investigation. And under ---- Well, let's just say, go ahead, that it's untruthful. So it bears on truthfulness. But the district court did have discretion under 403 to decide whether or not to go into the incident involving the cat. Trying to figure out how we can say that there was a clear abuse of discretion by the district court to have this devolved into a mini-trial, what happened with the cat, and then ultimately to show that the officer may have been cruel, you know, some cruelty to the cat somehow had bearing on what was happening here, that cruelty to a cat would be the basis to include this, and doesn't that mean that, you know, district court did use its discretion in saying, you know, well, we're not going to go there? Well, Your Honor, as argued to the district court, and I believe as is the case, the introduction of the evidence of dishonesty, the suppression of the evidence, didn't require any introduction of evidence regarding the cat incident, as I'll refer to it. The cat incident certainly preceded that. I don't know why the defendant would have wanted to bring that up to explain its actions, but we did not seek under 608B to bring out the cat incident, just the fact that it's there. Well, the district court has to decide, well, I'm just going to throw out that part, but not the rest. I mean, it's going to have to decide, you know, how far are we going to go with this, and is it, you know, reasonable, and does it make sense, to go into all of that to explain that statement, which certainly would be used by the defendant. Very respectfully, Your Honor, I don't see how any of that explains the statement. But that wouldn't be your call. That would be the call of the other side to maybe try to explain it, and that's in my view, that's what the district court judge was thinking about. We're going to deviate from the trial at hand and get into a mini trial about the context of this statement, and the judge was within its discretion, perhaps, in thinking that that might be confusing to the jury or distracting to the jury. Why is that an abuse of discretion? It's an abuse of discretion because every case has to be looked at at its circumstances. Even the judge recognized, Your Honor, that this was a case that turned on credibility. We have a plaintiff who obviously had some credibility issues. He obviously was arrested that night. The jury is tending to see him in a negative light. We have an officer whose defense is based entirely on his word and the jury believing his word, and they don't get to learn that this officer admits in the line of duty committing an act of dishonesty. And it was even more relevant in this case because the report that the officer wrote did not mention the force that he used. It did not mention the justification for it. And he got up on the stand and explained, oh, those were innocent omissions. The jury was entitled to learn that this officer was capable of and indeed had committed acts of dishonesty. Under the circumstances here, not in a vacuum, but under the circumstances here, it was an abuse of discretion. Did you want to save any time for rebuttal? Yes, Your Honor. Thank you.  Thank you. Thank you. Thank you, Your Honor. I'm James Wheatley. I'm appearing here for Officer Christopher Long. First, Your Honor, I'd like to address the question of the jury instruction. Frankly, the jury instructions proffered by the plaintiff, appellant in this case, were not accurate statements of the law. And we feel that the instruction provided by the Court, the Fourth Amendment model instruction with the conditions set out, adequately covered the case. What was inaccurate about the instruction? Well, the first instruction says a citizen's verbal objection to circumstances of his arrest, even if the various does not justify force under the Fourth Amendment, that's actually contrary to the case of Nelson v. Davis and Forrester v. City of San Diego, which is cited in Nelson. Nelson says even passive resistance may support the use of some degree of governmental force if necessary to attain compliance. Are you equating passive resistance and verbal resistance? Actually, yes. That goes to the case of Forrester, where protestors who were nonviolent were that pain compliance devices were used on protestors who were just protesting nonviolently. But that was not verbal. That was not verbal. It was passive resistance where they would go limp whenever the officers tried to arrest them. So I don't think those cases really stand for the proposition that someone can be But remember, the requested instruction doesn't contain the word merely. Worded as it is, it misleads the jury. It says verbal objections to the circumstances of arrest does not justify force. That by itself is not a complete accurate statement, because it's certain. Well, it's not inconsistent with those cases you just cited. No, as long as the jury understands that there are circumstances where a verbal objection can result in the use of force, reasonable use of force. Do you have a case that talks about verbal resistance being a justification for use of force? A case cited by the Headwater One case, which was also cited in the Nelson case, is a New York case where this court in Headwater approved the New York decision that found the use of pepper spray on a belligerent drunk to get cooperation was a reasonable use of force. And in the Headwater case, pepper spray is a higher use of force than a compliance hold. Right. But those were all to get compliance with the orders of the officers, not because someone was verbally abusive to an officer. Well, and that's why this instruction, in and of itself, is incomplete. I don't know about the other members of the panel. I'm not convinced by that argument. So maybe you might want to move to something. Let me just ask you, because it seems like the main argument is that the theory of the UOB wasn't able to present his theory of the case in terms of the instructions. What's your response to that? It seems like the instructions for the given for the excessive use of force track the model instruction, I think, from what I can tell. The plaintiff's theory of the case, as the Court said, could very adequately and thoroughly be argued under the existing Fourth Amendment instruction with the conditions to consider, for example, the severity of the crime or other circumstances to which the officer was responding, whether the plaintiff posed an immediate threat to the safety of the officer or others, whether the plaintiff was actively resisting. Those were all part of the circumstances given in the Fourth Amendment instruction, the model instruction from this Court. And that instruction allowed the plaintiff the latitude to argue his theory. And move on to the what we called the CAD incident, unless there's other questions on the first argument. I think it needs to be pointed out here that at no time did Officer Long attempt to conceal anything. Appellant says that Officer Long's obvious purpose in contacting the witness was to impair the investigation against him. The facts are, and this is in the supplemental excerpt of records that exhibit AK Volume 2, specifically page 397, a witness called Officer Long, a witness who apparently had photographs, and asked Officer Long a question. He just responded to the witness. He just said ---- What's your response to opposing counsel's observation that Officer Long admitted that if this had occurred in a criminal case, it would have been a violation of the law? No. That's a different question. I'm just asking you, what's your response to that statement? Do you agree with the statement? If this incident had occurred in a criminal investigation, it would not be a violation of the law, because this incident, as Officer Long testified about on the pages that I just cited, is altogether different than what appellants representing to this Court. Just so I'm clear on what you're saying, are you taking issue with the representation that Officer Long admitted that if this identical occurrence had taken place in a criminal investigation, it would have been a violation of the law? Correct. Do you say that Officer Long did not make that statement? Correct. That's a different question that was asked in his deposition than what's being asked about this incident. Bear in mind, in this incident, Officer Long never contacted the witness, never tried to dissuade a witness from offering any kind of statement to anybody. Officer Long never denied that the witness called him and asked him a question that he just gave his opinion to. I thought opposing counsel said that Officer Long admitted that if he had engaged in the exact same conduct he engaged in with the cat incident, if he had done that in the context of a criminal investigation, he would have been violating the law. You're denying that he made that admission? Yes. Officer Long never tried to destroy photographs, never tried to dissuade a witness from testifying. Officer Long himself admitted to the investigator this whole incident. Officer Long never showed a willingness to manipulate the system, to commit a crime. The case cited by Plaintiff, the Gordon v. United States case, upheld the Court's exercise of discretion, and that is what this amounts to, is an exercise of discretion. There was never an attempt by Officer Long to prevent this witness from testifying at all. And that's the presentation that Appellant is trying to make here, that Officer Long was attempting to dissuade the witness from testifying. That's not what happened. The witness told her story. The only question the witness had of Officer Long is, should I turn over, voluntarily turn over these photographs? And Long says, well, you know, it's up to you. But I wouldn't. So that's up to the witness. He's not telling her what to do. He's answering a question. And the photographs, you know, they weren't even his to talk about. They were never destroyed by him. And so there was never a specific intent on his part to commit the crime of a 136.  It's about the discretion of the witness, which is to dissuade a witness from testifying. Could you talk about the exclusion of the ambulance record? Yeah. I'm sorry. Yes, ma'am. The ambulance records lack a basic foundational problem that the Appellant has, and that is the Appellant never called anybody from American Ambulance to testify that such a record would have existed. Again, contrary to the assertion by Appellant, Officer Long never testified that the ambulance attended to Mr. Morris. If you look at Long's actual testimony at trial, what he said is the ambulance attendant opened the door, talked to Mr. Morris, Morris said he didn't need medical attention, so the ambulance attendant then attended Mrs. Morris. And if you look at Mrs. Morris's records, they show that, in fact, the ambulance took her blood pressure, her pulse, checked her skin, got a history from her. They attended her. So there's a record from Mrs. Morris. But when they approached Mr. Morris, he said, I'm okay. There was no record made. So the absence of a record in that case doesn't prove anything. If, in fact, the absence of a record would have proven something, then Appellant should have brought in somebody from American Ambulance to say, well, we would have done a record. We searched. There isn't one. And that's basically what happened in all of the cases cited by Appellant here, is there is a search for a record that's supposed to exist, and that record is missing. In our case, there was never evidence that the record would have existed anyway. So the absence of a record can easily be explained by the fact that Mr. Morris was never attended to. But the Court's concern was that we didn't know what inference should be made, if any, from the absence of a record, because they didn't know why the ambulance company didn't have a record. There was no one there to testify about what the regular procedure was when they make a record and when they don't. Well, that would be the Appellant's burden of proof at trial, to bring in somebody to talk about whether there would be a record, whether there should be a record. And that would have been an easy thing to do, just subpoena somebody from American Ambulance. But for whatever reason, Appellant decided not to do that. And the Court allowed him to do that, said, go ahead and do that, and he didn't. I don't remember, but that's probably. That's my recollection of the record. He said, go ahead. We'll have to subpoena someone. We'll go ahead then. Okay. Okay. That was the transcript. And the. What about the 404b evidence? Do you want to talk about the 404b evidence? The 404b? There's a number of incidents that the. Oh. On the motive. First of all, and I'm not conceding the Court erred at all. But if the Court erred in excluding this evidence, remember, this is a Fourth Amendment case. The jury found no Fourth Amendment violation to begin with. So the jury never got to the issue of punitive damages. Therefore, any evidence about punitive damages was never considered by the jury, and any error in excluding the evidence would be harmless. However, it's not, it was not an error. The incidents that the Appellant wanted the jury to hear about were all unsubstantiated incidents. In fact, for the internal affairs investigations, they were all exonerated. Officer O'Hanlon was exonerated on everything. Not one statement of one of these witnesses was supported by anybody else. In fact, the first one was a young man who made statements while his parents were there witnessing it, and they even disputed what he said. In the Stuckley incident, there was not one witness or physical evidence to support anything that person said. In the incident involving the woman that was arrested for public intoxication and possible child abuse, the witnesses all said she was highly intoxicated, flailing about and trying to fight officers as they were tempted to put her in a patrol car. So those are all unsubstantiated allegations that do not prove anything about motive, intent, malice. They would require several mini-trials because Officer Longwood didn't have to put on the witnesses who refute all these witnesses. And so the judge's discretion to exclude under 403 should be upheld. And I don't – frankly, they shouldn't have been even considered under 404, which also allows the discretion of the Court in determining whether the evidence would be admitted in the first place. If I have any other questions, I'd be happy to address them. It appears not. Thank you, Counsel. Thank you. Rebuttal. Thank you, Your Honor. Your Honor, because there is an issue regarding the substance of Officer Long's statement, I wanted to bring your attention to it. It's in – excuse me – in tab 8 of the excerpts of record, and the pertinent colloquy is – Page. Page 57, Your Honor. Okay. Question. I'd like you to explain to me why you feel that was within policy, that being the hiding of the photographs. Answer. I never overtly instructed anyone to destroy evidence. Question. Do you agree with me if you did, then that would be contrary to policy and law? Answer. Yes, sir. Question. It also, would you agree, would be contrary to policy and law to tell a witness not to cooperate with law enforcement? And the witness's answer was in a criminal investigation. Yes. The – But that begs the question as to whether or not she was being told not to cooperate with the investigation. He told the witness, if I were you, I wouldn't turn over those photographs. And the photographs, she called him because the photographs had been requested. So it appears that counsel have a different interpretation of what that statement  Seemingly. Okay. With respect to the ambulance record, Your Honor, the actually rule 8037 has been amended, and it was a clarifying amendment. My opponent is saying that I had the burden to prove that these records were in all respect trustworthy. Actually, that's the opponent's burden. It's not my burden. It's his burden to show that the normal presumption of an absence of a record in a particular circumstance is unwarranted for its admission. That's their burden, not mine. But don't you have the burden to first produce someone who will say that a record exists or that there is a record, and did you meet that obligation? We had the 8036 business record certification of the records of Mr. Morris, all of his ambulance records. There were records from other incidents, but not from that one incident. Well, would there be a record, though, if he refused treatment? And wasn't that the predicate factual issue that had to be resolved? Your Honor, he and his wife both refused treatment under the same circumstances. And I must take issue with counsel's portrayal that Mr. Morris was seen only briefly in the car. There's nothing in the record that shows how lengthy his contact with the ambulance personnel was. That is an unwarranted inference that's being drawn by opposing counsel. But doesn't the district court have to weigh all that after the district court had the benefit of being able to listen to the people who were giving the information about what happened? So how can we second-guess that when we just have the cold record and we don't have the opportunity to gauge the actual evidence that came in on this point? This, Your Honor, was a documentary issue. It wasn't. There were no witnesses who testified into this. And I should probably explain that, because I know that's a concern to Judge Navarro. Lawyers sometimes have to be judges' voices on the ground. Were you? Did you try this case? I did. But I thought Officer Long testified that there was no medical procedure done. There were no beatings, blood pressure taken, or anything other than just saying I don't want any treatment, whereas his wife was administered to. His wife refused treatment. And there was nothing in the record, at least that I recall, where Officer Long testified that nothing at all was done for Mr. Morris. He did refuse treatment. Did he refuse triage or assessment? There's nothing in the record, I believe, that indicates that. And just to answer Your Honor's question, having tried civil rights cases for 24 years, my experience is, is that if you don't get an ambulance person to say something in paper, they're never going to come to trial and say it. Most of them are aspiring police officers. So that's your reason for not calling? Absolutely. It was a strategic reason. Absolutely. So you think if you had called someone from the ambulance company, they would have denied different treatment? I don't understand what you're saying. They would have probably, in my estimation, speculated about a million different reasons why there couldn't have been a record. Didn't the court just want you to have someone come in to explain what is the usual procedure when you respond to a location? When do you fill out a report and when do you not fill out a report? So then the jury would know what kind of inference, if any, to draw from the absence of the record. My understanding, Your Honor, is that the judge was more concerned with, well, they could have simply forgotten to do a record, or that he maybe, Officer Long never told the people that he was in the car, which would go against Officer Long's own testimony. He never seemed to be concerned with the 803.6 foundational business record issues. And just to make it clear, all of Mr. Morris' ambulance records were certified and were produced. There were ambulance records from numerous other incidents, but nothing from this incident. So there was the business record foundation to introduce the records under 803.6, and we wanted particularly to introduce the absence of the record from this incident under 803.7. All right. Thank you, counsel. Thank you, Your Honor. Thank you to both counsel. The case is argued and submitted for decision by the Court.
judges: Navarro, Rawlinson, Murguia